**NOT FOR PUBLICATION**

RECEIVED

AUG 1 4 2006

AT 8:30_____ M
WILLIAM T. WALSH
CLERK

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

KWASI SEKOU MUHAMMAD,          :
also known as                  :     Civil Action No. 05-4999 (JBS)
MICHAEL WINSTEAD,              :
                               :
            Plaintiff,         :     **OPINION**
                               :
       v.                      :
                               :
NJ DEPARTMENT OF CORRECTIONS,  :
et al.,                        :
                               :
            Defendants.        :


**APPEARANCES:**

        KWASI SEKOU MUHAMMAD, Plaintiff pro se
        #422750/13988C
        New Jersey State Prison
        Trenton, NJ 08625

**SIMANDLE**, District Judge:

        Plaintiff Kwasi Sekou Muhammad, also known as Michael

Winstead ("Muhammad"), a state prisoner currently confined at New

Jersey State Prison in Trenton, New Jersey, previously confined

at South Woods State Prison in Bridgeton, New Jersey, seeks to

bring this civil action in forma pauperis under 28 U.S.C. §

1915(a).  Based on his affidavit of indigence and current absence

of three qualifying dismissals within 28 U.S.C. § 1915(g), the

Court will grant Muhammad's application to proceed in forma

pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of

the Court to file the Complaint.

At this time, the Court must review the Complaint to
determine whether it should be dismissed as frivolous or
malicious, for failure to state a claim upon which relief may be
granted, or because it seeks monetary relief from a defendant who
is immune from such relief.  For the reasons stated below, the
Complaint will proceed in part.

## I.   BACKGROUND

The following factual allegations are taken from Muhammad's
Complaint and are accepted as true for purposes of this review.

Muhammad alleges that, on October 29, 2002, he was housed in
D-2 on the second floor at the Albert C. Wagner Youth
Correctional Facility ("ACWYCF"), despite having an artificial
limb that made it difficult for him to climb stairs.  On October
30, 2002, Muhammad asked for a medical slip to see the doctor at
the ACWYCF medical department due to pain in his limb.  Muhammad
was given an appointment at 1:00 p.m. and received a pass to go
to the medical department.  Despite plaintiff's complaint of an
emergency, defendant A. Sexton told plaintiff to return to his
tier.  As he entered Delta-wing at ACWYCF to go up to his tier,
Muhammad fell down a flight of stairs when the foot on his
prosthetic limb broke at the ankle.[1]  He was taken to the

_____

[1]  Muhammad received a below-the-knee prosthesis in June
2002, which had been designed and fitted by Wayne T. Lawell of
Harry J. Lawell & Son, Inc. at ACWYCF.  Plaintiff states that the
artificial limb was defective and caused his stump to blister.
He complained to the medical department at ACWYCF and to Mr.

2

hospital for treatment of his injuries and was returned to the ACWYCF infirmary where plaintiff stayed for two weeks.

In the fall, Muhammad had injured his lower back and left hip.  From January 2003 through August 2003, plaintiff submitted sick call requests for physical therapy and medication to treat his injuries.  Defendant Dr. Reddy at ACWYCF told plaintiff that he would not provide the treatment requested.  Despite numerous sick call requests and a grievance filed with the ombudsman at ACWYCF on February 27, 2003, Muhammad received no therapy.  On September 24, 2003, plaintiff was transferred to South Woods State Prison ("SWSP").  After being examined by the medical department at SWSP, with x-rays revealing that plaintiff had scoliosis, Muhammad began receiving medication and therapy.

Muhammad brings claims of medical negligence and an Eighth Amendment conditions of confinement claim and denial of medical care claim under 42 U.S.C. § 1983.  He also asserts violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.  The named defendants are: the New Jersey Department of Corrections; correctional officers Kidwell and A. Sexton at ACWYCF; Correctional Medical Services, Inc. ("CMS"); Dr. Chenna G. Reddy and John and Jane Doe doctors and medical staff at ACWYCF; and Harry J. Lawell & Son, Inc. and Wayne T. Lawell (the

---

Lawell, but nothing was done until after his accident on October 30, 2002.

3

"Lawell defendants"), doing business in Lawrenceville, Edison, and Toms River, New Jersey and Philadelphia, PA.

Plaintiff alleges that the defendant Kidwell was deliberately indifferent to Muhammad's condition when he housed plaintiff on the second tier without regard to plaintiff's disability, in violation of the Eighth Amendment.  Muhammad also claims that defendants Sexton and the John and Jane Does of the ACWYCF medical department denied him medical care in violation of his Eighth Amendment rights when they refused to treat him on October 30, 2002.  Next, plaintiff alleges that the Lawell defendants were negligent in constructing his prosthetic device. Muhammad also contends that Dr. Reddy's failure to properly treat plaintiff by providing physical therapy for plaintiff's hip and back injuries constitutes a tort of medical malpractice, as well as a denial of medical care claim under § 1983.  Finally, Muhammad claims that all of the defendants violated his rights under the ADA when they intentionally disregarded plaintiff's rights, housing conditions, and provision of medical services and treatment.

Muhammad seeks punitive and compensatory damages from the defendants.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996),

4

requires a district court to review a complaint in a civil action
in which a prisoner is proceeding in forma pauperis or seeks
redress against a governmental employee or entity.  The Court is
required to identify cognizable claims and to sua sponte dismiss
any claim that is frivolous, malicious, fails to state a claim
upon which relief may be granted, or seeks monetary relief from a
defendant who is immune from such relief.  28 U.S.C. §§
1915(e)(2)(B) and 1915A.[2]

In determining the sufficiency of a pro se complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United
States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must
assume the truth of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff.  Gibson v.
Superintendent of N.J. Dep't of Law & Pub. Safety-Division, 411
F.3d 427, 431 (3d Cir. 2005).  The Court need not, however,

_____

[2]  Muhammad should also be aware that the PLRA requires
Courts to determine whether a prisoner has, on three or more
prior occasions while incarcerated or detained in any facility,
brought an action or appeal in federal court that was dismissed
as frivolous, malicious, or for failure to state a claim upon
which relief may be granted.  If so, the prisoner is precluded
from bringing an action in forma pauperis unless he or she is
under imminent danger of serious physical injury.  28 U.S.C. §
1915(g).  It does not appear that Muhammad has filed any lawsuits
which were dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and
1915A, at this time.

credit a pro se plaintiff's "bald assertions" or "legal
conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis
either in law or in fact." Neitzke v. Williams, 490 U.S. 319,
325 (1989) (interpreting the predecessor of § 1915(e)(2), the
former § 1915(d)). The standard for evaluating whether a
complaint is "frivolous" is an objective one. Deutsch v. United
States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a
claim only if it appears "'beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v.
Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d
371, 373 (3d Cir. 1981). However, where a complaint can be
remedied by an amendment, a district court may not dismiss the
complaint with prejudice, but must permit the amendment. Denton
v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d
229 (3d Cir. 2004)(complaint that satisfied notice pleading
requirement that it contain short, plain statement of the claim
but lacked sufficient detail to function as a guide to discovery
was not required to be dismissed for failure to state a claim;
district court should permit a curative amendment before
dismissing a complaint, unless an amendment would be futile or
inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103,

108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.

§ 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.

2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v.

Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

A complaint that sets forth facts which affirmatively demonstrate

that the plaintiff has no right to recover is properly dismissed

without leave to amend.  Grayson, 293 F.3d at 106.

### III.  ANALYSIS

A.  Section 1983 Claims

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

Here, Muhammad names the New Jersey Department of
Corrections ("NJDOC") as a defendant in this matter.  However,
the NJDOC is not a "person" subject to suit under 42 U.S.C. §
1983.  See Will v. Michigan Dept. of State Police, 491 U.S. 58,
68-70 (1989) (holding that States and governmental entities
considered "arms of the State" for Eleventh Amendment purposes
are not "persons" within the meaning of § 1983); Grabow v.
Southern State Correctional Facility, 726 F. Supp. 537, 538-39
(D.N.J. 1989) (stating that New Jersey Department of Corrections
and state prison facilities not "persons" under § 1983).
Therefore, the § 1983 claims will be dismissed as against the
defendant NJDOC.

1.   Conditions Claim

Muhammad's first § 1983 claim alleges that defendant Kidwell
housed plaintiff on the second tier instead of the first floor
with deliberate indifference to plaintiff's disability.  Muhammad
asserts that this action by defendant Kidwell constitutes cruel
and unusual punishment in violation of the Eighth Amendment.
These allegations, if true, may be sufficient to allow an Eighth
Amendment conditions claim to proceed; however, it appears on the
face of the Complaint that this claim is time-barred.

A court may dismiss a complaint for failure to state a
claim, based on a time-bar, where "the time alleged in the
statement of a claim shows that the cause of action has not been

8

brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint. See, e.g., Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hall v. Geary County Bd. of County Comm'rs, 12 Fed. Appx. 855 (10th Cir. 2001) (unpub.) (applying Pino to current § 1915(e)); Rounds v. Baker, 141 F.3d 1170 (8th Cir. 1998)(unpub.) (same); Johnstone v. United States, 980 F.Supp. 148 (E.D. Pa. 1997) (same).

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. STAT. ANN. § 2A:14-2, governs plaintiff's claims. See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).

Here, the statute of limitations began to run, at the latest, with respect to the condition claim, on or about October 29, 2002 when Kidwell housed plaintiff on the second tier despite plaintiff's disability. See Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (a section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which the action is based). This Complaint was received by the Court on or about October 18, 2005, almost one year after two-year statute of limitations had expired on or about October 29, 2004.[3] Therefore, any potential § 1983 claim based on this event is time-barred.

Moreover, Muhammad has not asserted facts suggesting any basis for statutory tolling. See, e.g., N.J. STAT. ANN. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable). New Jersey law also permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a

---

[3] The Complaint was not received by the Court until October 18, 2005, but even if the Court were to give Muhammad the benefit of all inferences related to the date he filed his complaint by using the date he signed his Complaint, September 26, 2005, as the date he handed the Complaint to prison officials to be mailed to the Court for filing, see Houston v. Lack, 487 U.S. 266, 276 (1988); Burns v. Morton, 134  F.3d 109, 113 (3d Cir. 1998)(incorporating the "mailbox rule" for habeas petitions submitted by inmates confined in an institution), this action would still be time-barred.

plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.  See Freeman v. State, 347 N.J. Super. 11, 31 (N.J. Super. App. Div.) (citations omitted), certif. denied, 172 N.J. 178 (2002).  "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  Id.

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000).  Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

Id. n.9.

Here, the Complaint alleges no extraordinary circumstances that would permit equitable tolling under either New Jersey or federal law.  There are no allegations that Muhammad was unaware of his rights before the limitations period expired on October 29, 2004.  Nor are there any allegations that defendants

11

prevented Muhammad in any way from timely filing his Complaint. Therefore, because it is clear on the face of the Complaint that the Eighth Amendment conditions of confinement claim is time-barred, and no extraordinary circumstances are alleged to warrant equitable tolling, this claim must be dismissed with prejudice as untimely.

### 2. Denial of Medical Care Claims

Muhammad asserts two separate denial of medical care claims. The first claim alleges that defendants Sexton, the John and Jane Does of the ACWYCF medical department, and CMS violated his Eighth Amendment rights when they refused to treat him on October 30, 2002. His second claim states that Dr. Reddy denied plaintiff any physical therapy for plaintiff's back and hip injuries from January 2003 through August 2003.

#### a. *Claim Against Sexton, CMS, and Doe Defendants*

This claim, like the Eighth Amendment conditions claim, is also time-barred. The claim accrued on October 30, 2002 when the defendants refused to treat plaintiff that day. The Complaint states that plaintiff did receive emergency treatment after his fall that day. Therefore, Muhammad had until October 30, 2004 to file a denial of medical care claim as against these defendants for their deliberate denial of medical care without justification. As stated above, this Complaint was not filed until October 2005, almost a year after the limitations period

had expired.   There are no allegations that Muhammad was unaware

of his rights before the limitations period expired on October

30, 2004.   Nor are there any allegations that the defendants

prevented Muhammad in any way from timely filing his Complaint.

Therefore, because it is clear on the face of the Complaint that

this denial of medical care claim is time-barred, and no

extraordinary circumstances are alleged to warrant equitable

tolling, this claim must be dismissed with prejudice as untimely.

> b.   *Claim Against Dr. Reddy*

Muhammad also alleges that Dr. Reddy denied him treatment

for his back and hip injuries from the October 30, 2002 fall.   In

particular, plaintiff states that he was denied physical therapy

despite his repeated requests from January 2003 through August

2003.   On or about September 24, 2003, Muhammad was transferred

to SWSP where, after medical examination and x-rays diagnosing

scoliosis, he was eventually provided physical therapy.

The Eighth Amendment proscription against cruel and unusual

punishment requires that prison officials provide inmates with

adequate medical care.   Estelle v. Gamble, 429 U.S. 97, 103-04

(1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).   In order

to set forth a cognizable claim for a violation of his right to

adequate medical care, an inmate must allege:   (1) a serious

medical need; and (2) behavior on the part of prison officials

that constitutes deliberate indifference to that need.   Estelle,

429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety).

14

"Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. <u>Andrews v. Camden County</u>, 95 F. Supp.2d 217, 228 (D.N.J. 2000); <u>Peterson v. Davis</u>, 551 F. Supp. 137, 145 (D. Md. 1982), <u>aff'd</u>, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended

15

treatment.  See Rouse, 182 F.3d at 197.  The court has also held
that needless suffering resulting from the denial of simple
medical care, which does not serve any penological purpose,
violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See
also Monmouth County Correctional Institutional Inmates, 834 F.2d
at 346 ("deliberate indifference is demonstrated '[w]hen ...
prison authorities prevent an inmate from receiving recommended
treatment for serious medical needs or deny access to a physician
capable of evaluating the need for such treatment"); Durmer v.
O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897
F.2d 103 (3d Cir. 1990).

     Here, Muhammad alleges that he sustained injuries to his
back and left hip from the fall on October 30, 2002.  He
repeatedly requested that physical therapy or other medical
treatment be provided because he was suffering from pain and
disability.  Plaintiff also states that he was later diagnosed
with scoliosis.  At the time that he was being denied treatment
in 2003, plaintiff was not diagnosed by a physician as requiring
treatment.  Nor was his medical condition one that was so obvious
that a lay person would recognize the necessity for physical
therapy.  Atkinson, 316 F.3d at 272-73.  However, Muhammad
appears to contend that this denial of treatment resulted in the
unnecessary and wanton infliction of pain and scoliosis.  Whether
plaintiff's allegations of serious pain and scoliosis constitute

16

a serious medical condition is a fact issue, which is not subject to sua sponte dismissal by the Court on a preliminary screening. Therefore, viewing the allegations in a light most favorable to plaintiff, the Court will assume at this juncture that, if the allegations are true, plaintiff has pled a prima facie claim of serious medical need sufficient to avoid a summary dismissal at this initial stage of litigation.

The Court must next determine whether Muhammad has alleged facts sufficient to support the second prong under Estelle, i.e., deliberate indifference.  Muhammad alleges that despite his repeated sick call requests and complaints of pain from his back and hip injuries, Dr. Reddy refused, without medical justification, to provide physical therapy to plaintiff.  These allegations, if true, suggest deliberate indifference.  See Rouse, 182 F.3d at 197 (finding deliberate indifference where a prison official delays necessary medical treatment for non-medical reasons).  Therefore, at this early stage of litigation, the Court is inclined to allow the denial of medical care claim as against Dr. Reddy to proceed.[4]

_____

[4]  The Court notes that there may be an issue as to whether this claim is likewise time-barred as plaintiff's other claims. However, the allegations in the Complaint suggest that this denial of medical care claim may have continued past September 2003.  There is no indication when plaintiff actually began receiving medical treatment for his condition.  Therefore, the Court believes this issue is not so free from doubt that it can be dismissed at this early stage upon the pleadings.

B.  State Law Claims

Muhammad also asserts two state law claims in this
Complaint.  He alleges a claim of medical negligence against Dr.
Reddy for his failure to treat plaintiff for his back and hip
injuries.  As this Court has allowed plaintiff's § 1983 claim
against Dr. Reddy to proceed, which involves the same events and
issues of fact, the Court will exercise supplemental jurisdiction
over this related state law tort claim pursuant to 28 U.S.C. §
1367(a).

The second state law tort claim is asserted against the
Lawell defendants for their negligent construction and fit of
plaintiff's prosthesis.  The facts alleged in the Complaint show
that the foot on plaintiff's limb prosthesis broke on October 30,
2002.  Thus, this negligence claim accrued on October 30, 2002
when plaintiff became aware of, or discovered that, his
prosthesis was defective.  Plaintiff's state law tort claim of
negligence alleging personal injury has a two-year statute of
limitations period.  N.J. STAT. ANN. § 2A:14-2.  Consequently, this
claim is time-barred because Muhammad filed this Complaint almost
one year after the limitations period expired on October 30,
2004.

C.  ADA Claim

Finally, Muhammad asserts a ADA claim under Title II against
all the named defendants, claiming that the defendants

intentionally disregarded plaintiff's rights with respect to housing conditions and the provision of medical services and treatment.

Title II of the ADA provides that qualified disabled persons shall not "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This provision of the ADA applies to services, programs, and activities provided within correctional institutions. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998).

To state a claim under Title II of the ADA, Muhammad must show that: "(1) he is a qualified person with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Calloway v. Boro of Glassboro Dep't of Police, 89 F. Supp. 2d 543, 551 (D.N.J. 2000).

As to the first factor, Muhammad, by virtue of his artificial limb, is handicapped and thus would be a qualified individual for purposes of the ADA. Second, the Complaint asserts that Muhammad was denied access to medical treatment for his condition. Clearly, medical services are covered under the

19

ADA.  Finally, the Complaint sufficiently asserts that Muhammad made requests to prison officials to be accommodated for physical therapy services that were never provided.  However, it is not clear that he was denied the benefit of physical therapy and treatment by reason of his disability.  Nevertheless, because this is a factual issue alleged by plaintiff, the Court is constrained to find that plaintiff has at least alleged the third element of an ADA claim.

While Muhammad alleges certain facts that may tend to support a cognizable claim under the ADA, he brings this action against individual defendants.[5]  Title II of the ADA prohibits discrimination in services, programs, or activities of a "public entity" or "discrimination by any such entity."  42 U.S.C. § 12132.  "Public entity" is defined in the statute as:

> (A)  any State or local government;
> (B)  any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

---

[5]  The NJDOC and CMS are also named defendants in this action.  As state public entities, they would fall under the act. 42 U.S.C. § 12131.  Recently, the Supreme Court held that Title II of the ADA validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment.  United States v. Georgia, 126 S.Ct. 877, 163 L.Ed.2d 650 (Jan. 10, 2006).  Here, plaintiff's denial of medical care claim under the Eighth Amendment is made applicable to the States through the Fourteenth Amendment.  Accordingly, the State public entity defendants are subject to liability under the ADA claim as alleged by plaintiff in the Complaint.

(C)  the National Railroad Passenger Corporation, and any commuter authority (as defined in section 502(8) of Title 45).

42 U.S.C. § 12131.  "Public entities" encompassed by Title II of the ADA include correctional facilities.  Yeskey, 524 U.S. 206. This section clearly does not include individuals.  See Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)(en banc), cert. dismissed, Alsbrook v. Arkansas, 529 U.S. 1001 (2000).  Thus, the individual defendants named herein cannot be held liable for violations of Title II of the ADA.  See Calloway, 89 F. Supp. 2d at 557 and Yeskey v. Commonwealth of Pennsylvania, 76 F. Supp. 2d 572, 574-75 (M.D.Pa. 1999).  The ADA claim will be dismissed as against the individual defendants accordingly.

However, the Court will allow the Title II claim under the ADA, with respect to the claim alleging denial of medical services in 2003, to proceed as against the state public entities, NJDOC and CMS.  See this Opinion, supra, at fn. 5.  All other claims against these state public entity defendants, with respect to conditions of confinement and denial of medical care on October 30, 2002, are dismissed as time-barred.  See Smith v. City of Philadelphia, 345 F. Supp.2d 482 (E.D. Pa. 2004)(claims under Title II of the ADA are governed by the state statute of limitations for personal injury claims); see also Freed v. Consolidated Rail Corp. 201 F.3d 188 (3d Cir. 2000).

CONCLUSION

For the reasons set forth above, the § 1983 claims will be dismissed as against the NJDOC pursuant to 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1).  Plaintiff's Eighth Amendment conditions claim as to defendant Kidwell, the Eighth Amendment denial of medical care claim related to the October 30, 2002 incident, as against defendants Sexton, CMS and the Doe defendants, and the state law tort claim against the Lawell defendants, are dismissed with prejudice as time-barred. However, plaintiff's Eighth Amendment denial of medical care claim under § 1983, as against Dr. Reddy, will be allowed to proceed at this time.  The Court will exercise supplemental jurisdiction over the related medical negligence claim as against Dr. Reddy, pursuant to 28 U.S.C. § 1367(a).  Finally, plaintiff's Title II claim under the ADA will be dismissed in its entirety as against all individual defendants.  The ADA claim with respect to the denial of medical services in 2003 will be allowed to proceed as against the state public entity defendants, NJDOC and CMS. All other claims asserted against the state public entity defendants will be dismissed as time-barred.  An appropriate Order accompanies this Opinion.

JEROME B. SIMANDLE
United States District Judge

DATED: August 14, 2006

22