```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KWASI SEKOU MUHAMMAD, a/k/a MICHAEL WINSTEAD, | |
| Plaintiff, | Civil No. 05-4999 (JBS) |
| v. | OPINION |
| DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

**APPEARANCES:**

Kwasi Sekou Muhammad
#422750/13988C
East Jersey State Prison
Lock Bag R
Rahway, NJ 07065
    Plaintiff pro se

Susan Marie Scott, Esq.
OFFICE OF THE NJ ATTORNEY GENERAL
RJ Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625
    Attorney for Defendant New Jersey Department of Corrections

**Simandle, District Judge:**

**I.    INTRODUCTION**

    This matter is before the Court on Plaintiff's request for pro bono counsel [Docket Item 50] and the motions of Defendant New Jersey Department of Corrections ("NJDOC") to dismiss the complaint [Docket Item 21] and to seal certain documents filed in connection with the motion to dismiss [Docket Item 19].

**II.   BACKGROUND**

Plaintiff's initial motion for pro bono counsel was denied without prejudice as premature at the commencement of this litigation [Docket Item 4]. NJDOC received extensions of time to answer from September 21, 2006 to November 16, 2006. At that time, it filed the current motion to dismiss. Plaintiff subsequently renewed his request for counsel, and NJDOC opposed.

Plaintiff has asserted claims against the New Jersey Department of Corrections under Title II of the Americans with Disabilities Act ("ADA"), including claims for damages. In its motion to dismiss, the NJDOC argues that Title II of the ADA is unconstitutional as applied to state prisons under the Eleventh Amendment and that this litigation against it is, therefore, barred.

**III. DISCUSSION**

The Court may, pursuant to 28 U.S.C. § 1915(e)(1), request an attorney to represent an indigent plaintiff in a civil action. See L. Civ. R., App. H. Under 28 U.S.C. § 1915(e) "district courts [have] broad discretion to request an attorney to represent an indigent civil litigant." <u>Tabron v. Grace</u>, 6 F.3d 147, 153 (3d Cir. 1993). In exercising that discretion, this Court typically considers (1) the plaintiff's ability to present his or her case; (2) the complexity of the legal issues involved; (3) the degree to which factual investigation will be necessary

and the plaintiff's ability to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require expert testimony; and (6) whether the plaintiff can attain and afford legal counsel. Id. at 156-57; Parham v. Johnson, 126 F.3d 454 (3d Cir. 1997).

In this case, the second factor, the complexity of the legal issues, makes it extremely difficult for Plaintiff to present his case. The NJDOC argues that as applied to state penal institutions Title II of the ADA is not a valid exercise of Congress's authority under Section 5 of the Fourteenth Amendment. As this Court explained in Williams v. Hayman, No. 06-3705, slip op. at 7 n.2, (D.N.J. June 11, 2007) (granting pro bono counsel), that constitutional issue is complicated and unsettled insofar as the challenged conduct may not violate the plaintiff's constitutional rights. See United States v. Georgia, 546 U.S. 151 (2006) (permitting damages actions under Title II against state prisons when violations also constitute Fourteenth Amendment violations but declining to decide whether Eleventh Amendment bars other Title II damages actions); see also Cochran v. Pinchak, 401 F.3d 184 (3d Cir. 2005) (holding, under pre-Georgia analytical framework, that Eleventh Amendment precludes claim for damages against New Jersey prison under Title II), vacated 412 F.3d 500 (3d Cir. 2005).

Even when some of the challenged conduct may independently

violate the Fourteenth Amendment, the parties and the Court must carefully determine "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." Georgia, 546 U.S. 159.  This would be difficult for a pro se plaintiff to do, especially as to the third phase of the inquiry, which may require research into whether there is a legislative, judicial and sociological history of discrimination against individuals with disabilities in prisons that justifies the enactment of prophylactic measures. See, e.g., Tennessee v. Lane, 541 U.S. 509, 525 (2004) ("decisions of other courts, too, document a pattern of unequal treatment in the administration of a wide range of public services, programs, and activities, including the penal system"). Additionally, a proper analysis would include explication of the history of relevant historical and contemporary conduct, legislation, regulations and judicial decisions in other states. See id. at 523-25 (relating history of disability discrimination in states).

Plaintiff is currently incarcerated.  There is a dispute in this case whether his access to the law library is sufficient.

4

[Docket Items 48 and 49]. Putting that issue aside, and although Plaintiff appears to have access to basic legal materials and a typewriter, the Court finds that this litigation may likely require extensive access not only to those materials but also to legislative records, historical documents, and judicial decisions that are unavailable in the typical prison law library. Thus, Plaintiff's incarceration impacts his ability to represent himself in this complex litigation. Accordingly, the first two Tabron factors weigh in favor of the request for counsel.

As to the third factor, factual investigation and analysis will be necessary in this case that may be beyond Plaintiff's abilities while he is incarcerated. To pursue his ADA claim, Plaintiff must show that there is a relevant history and pattern of discrimination against individuals with disabilities in prisons such that Title II is constitutional as applied to the NJDOC, as explained above. Additionally, discovery disputes are ongoing in this case, indicating that Plaintiff is currently having problems with factual investigation. [Docket Item 57, Plaintiff's motion to compel]. Thus, this factor weighs in favor of Plaintiff's request for counsel.

Credibility determinations and expert testimony may be necessary to adjudicate Plaintiff's claims that the prison medical services and housing arrangements, on the second floor, were deficient and discriminatory. At trial, a jury would have

5

to determine whether to believe Plaintiff's testimony about the extent of his unanswered requests for medical care.  It is conceivable that a doctor, architect, prison official or other expert might testify about potential reasonable accommodations for physical therapy and housing.  Thus, <u>Tabron</u> factors four and five weigh in favor of the request for counsel.

As to the final <u>Tabron</u> factor, it does not appear that Plaintiff could attain or afford counsel on his own.  This Court determined that Plaintiff was indigent when it granted his request for <u>in forma pauperis</u> status on August 14, 2006 [Docket Item 9].  He has indicated to the Court that he has been unable to procure counsel.  Thus, the final <u>Tabron</u> factor also weighs in favor of his request.

Additionally, "[i]f it appears that an indigent plaintiff with a claim of arguable merit is incapable of presenting his or her case, serious consideration should be given to appointing counsel. . . and if such a plaintiff's claim is truly substantial, counsel should ordinarily be appointed." <u>Id.</u> at 156 (citations omitted).  Plaintiff is indigent and, as noted above, will have serious difficulties presenting his case.  The Court has already determined that the case against the NJDOC arguably has merit in its screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  Further, the position that the ADA bars discrimination in state prisons is certainly meritorious, even if

6

undecided.  Accordingly, this supplemental consideration weighs in favor of the request for counsel.

## IV. CONCLUSION

For all these reasons, the Court shall enter an appropriate Order requesting the appointment of pro bono counsel to represent Plaintiff and dismissing the pending motions to dismiss and to seal, without prejudice, to be reinstated at the request of Defendants once counsel has been appointed.


**June 12, 2007**                              **s/ Jerome B. Simandle**
Date                                           Jerome B. Simandle
                                               U.S. District Judge