```
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KWASI SEKOU MUHAMMAD, a/k/a MICHAEL WINSTEAD, | |
| Plaintiff, | Civil No. 05-4999 and Civil No. 05-5001(JBS/AMD) |
| v. | **OPINION** |
| DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

APPEARANCES:

Kwasi Sekou Muhammad, Pro Se
SBI # 000139888
SOUTHERN STATE CORRECTIONAL FACILITY
4295 Route 47
Delmont, NJ 08314

Susan Marie Scott, Deputy Attorney General
Joseph M. Micheletti, Deputy Attorney General
Marvin L. Freeman, Deputy Attorney General
OFFICE OF THE NJ ATTORNEY GENERAL
RJ Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625
    Attorney for Defendants New Jersey Department of
    Corrections, Officer DeMaio, and Officer Williams

**SIMANDLE,** Chief Judge:

I.  **INTRODUCTION**

This matter is before the Court on an Order of March 29, 2012 convening a hearing to take argument and evidence on the scope of the parties' settlement agreement [Docket Item 182], to enable this Court to execute its previous order for the enforcement of that agreement [Docket Item 154].  The principal

matter before the Court is whether the $15,000 to which Plaintiff is entitled may be offset by judgments owed to the State but not identified in the settlement release.[1]  For the reasons set forth in today's Opinion, the Court will enforce the settlement in the full amount of $15,000, as the unambiguous text of the release provides only for reduction based on liens identified in the release.  By consent of the parties, the Court will also order that the check be issued to Plaintiff's grandmother, instead of Plaintiff's former attorney, who withdrew as pro bono counsel with leave of this Court.

## II.  BACKGROUND

Plaintiff Kwasi Sekou Muhammad is an inmate who is presently confined at Southern State Correctional Facility in Delmont, New Jersey, and who was previously confined at several other facilities that are the subject of the underlying suit in this case.  Plaintiff, proceeding pro se, filed two lawsuits related to medical treatment and the conditions of his confinement, Civil Action No. 05-4999 and Civil Action No. 05-5001.  Plaintiff was appointed pro bono counsel (Jerry Tanenbaum, John Armstrong, and Tracey Overton of Schnader Harrison Segal & Lewis LLP), and these

---

[1] According to Defendants, these judgments include a judgment against Plaintiff in the amount of $7,138.25 entered on behalf of the Public Defender; a family court judgment in the amount of $1,900; and two $50 parking tickets.  [Docket Item 168.]

two actions were consolidated.

After this Court granted Defendants' motion for summary judgment as to all claims except Plaintiff's conditions of confinement and Eighth Amendment claims, Plaintiff authorized his attorneys to make a settlement proposal to Defendants in the amount of $14,000 with authority to negotiate towards a settlement in the vicinity of $10,000.  On February 11, 2009, Plaintiff's counsel and Defendants' counsel orally agreed to a settlement of $15,000, with certain then-outstanding fines and liens to be deducted in the amount of $2,425 unless satisfied before the settlement was paid.  The seventh paragraph of the release drafted pursuant to those discussions reads:

> Payment in the amount of $15,000, less $2,425.00 (which shall be deducted to satisfy the three (4) [sic.] recorded liens that are attached as Exhibit A), shall be made payable to "Jerry L. Tanenbaum, Esquire, counsel to plaintiff, Kwasi Sekou Muhammad" as counsel for the Releasor as full payment and satisfaction of all claims. . . . In the event that the recorded liens attached as Exhibit A are either waived entirely or reduced prior to payment by the Releasees, Releasor shall notify Releasees, and the payment shall be adjusted accordingly.

Draft Release of February 13, 2009 [Docket Item 140 at Exhibit B].

This release was never signed by Plaintiff.  Nevertheless, based on the oral agreement with Plaintiff's counsel, Defendants believed they had a deal.  On August 24, 2009, Defendants filed a

3

motion to enforce the settlement agreement [Docket Item 140]. On September 3, 2009, Plaintiff's counsel filed a cross-motion to withdraw due to a conflict of interest, which was granted on November 6, 2009. [Docket Item 143.]

Defendant sought enforcement of the agreement as outlined in the February 13 draft release, including the release of rights to appeal the decision with respect to Civil Action No. 05-4999. Plaintiff contended that the scope of his settlement authority was only for settlement of the claims against the state defendants that were proceeding to trial, and not his right to appeal those claims against the state defendants that had been previously dismissed by the Court on summary judgment. At that time, the parties believed themselves to be in agreement over the amount of the deductions for specific listed debts owed.

After an evidentiary hearing on March 18, 2010, the Court determined that Plaintiff gave his counsel authority to settle all claims against the State defendants for at least $10,000, and that under that authority his counsel made a $15,000 settlement demand as to all State Defendants in the consolidated cases. The Court found that this prompted Deputy Attorney General Scott to make a counter-offer to settle all claims against the State Defendants in Civil Nos. 05-4999 and 05-5001 for the amount of $15,000 less a deduction for the various fines and liens owed by Plaintiff to the State. Because the State's counter-offer, even

4

with the deductions, was well above the $10,000 settlement floor Plaintiff had authorized, this represented a settlement within Plaintiff's counsel's authority. Therefore, the Court found that the final terms of the oral settlement were enforceable and accurately reflected in the unsigned release, namely, payment to Plaintiff of $15,000 less $2,425 in listed liens, in exchange for Plaintiff's release of all claims in his two actions. [Docket Item 153 at 7.][2]

Over the subsequent year, the State Defendants refused to make this payment. Defendants now insist on a clarifying order of this Court as to the amount properly owed.[3] Defendants take the position that all fines and liens outstanding at the time the $15,000 will be paid must be deducted from it, resulting in a payout today in the amount of $5,861.75, because Defendants have identified yet more liens since the time of the Court's enforcement order. Plaintiff contends that the draft release held to be enforceable by this Court provides only for the

---

[2] The Court's precise finding was that "The final terms of the settlement are accurately reflected in the proposed Release, which Mr. Tanenbaum forwarded to Mr. Muhammad by letter dated February 13, 2009." Findings of Fact and Conclusions of Law ¶ 11 [Docket Item 153 at 7].

[3] There is also an issue as to whom the check should be made out to, as the release indicates that it is to be sent to Plaintiff's now-withdrawn attorney who took a position adverse to Plaintiff in the evidentiary hearing to determine the scope of counsel's settlement authority. But as explained further below, the parties have agreed to resolve that issue by making the check payable to Plaintiff's grandmother.

deduction of those fines and liens outstanding when the release was drafted, which have since been satisfied.  There is no dispute that the $2,425 in originally listed liens has been satisfied.  The dispute is over whether additional later-discovered liens may be used to reduce the settlement payout.

**III.  DISCUSSION**

    **A.  Amount of Settlement**

Construction and enforcement of settlement agreements is governed by state law.  <u>Excelsior Ins. Co. v. Pennsbury Pain Ctr.</u>, 975 F. Supp. 342, 348-49 (D.N.J. 1996).  Under New Jersey state law, a "settlement between parties to a lawsuit is a contract like any other contract."  <u>Peskin v. Peskin</u>, 638 A.2d 849, 856 (N.J. Super. Ct. App. Div. 1994).  This Court found that the final terms of the parties' oral settlement were accurately reflected in the February 13, 2009 draft release.  This finding of fact was not challenged or appealed by Defendants.  Therefore, the Court must treat the text of the release as a contract.

The plain text of this contract makes clear its scope with respect to the liens:  Defendants are to "make payment in the amount of $15,000, less $2,425.00" unless "the recorded liens attached as Exhibit A are either waived entirely or reduced prior to payment by the Releasees" in which event "the payment shall be adjusted accordingly."  Draft Release of February 13, 2009

6

[Docket Item 140 at Exhibit B]. The Release makes no provision for the deduction of any other liens or fines, and it is undisputed that Plaintiff has satisfied the fines and liens identified in the release.[4] Therefore, the Court will enforce the settlement in the full amount of $15,000.

### B. To Whom To Pay the Check

Although the contract provides for the check to be made payable to Plaintiff's former counsel, Defendants represent that Mr. Tanenbaum has indicated that he would prefer not to handle the funds; Plaintiff would prefer that the funds be made payable to his grandmother; and Defendants have no objection to this modification. Therefore, the Court will order that a check in the amount of $15,000 be made payable to "Mattie Rice for the

---

[4] The parties agree that after this release was formulated, Mr. Muhammad (through counsel) indicated a desire that other fines or fees be paid to the State out of the settlement funds. However, it is also undisputed that no revised release was ever produced to supplant the February 13 draft. If any other negotiations about payment of liens other than those included in the release were ever finalized, they are not reflected in this agreement. The later negotiations are at best parol evidence, and parol evidence is not admissible to interpret unambiguous contractual language. See Chance v. McCann, 405 N.J. Super. 547, 564, 966 A.2d 29, 41 (App. Div. 2009) ("Because there is no ambiguity in the agreement as written with respect to that issue, there is no need for parol or extrinsic evidence to interpret it."). Furthermore, Defendants sought to enforce the terms of the Draft Release of Feb. 13, 2009, and this Court did so. That is the parties' agreement, determined under the law of this case, and neither party is free now to vary the terms of the enforced agreement.

benefit of Kwasi Sekou Muhammad," and delivered to 172 South 9th St., Newark, NJ 07107.

## IV. CONCLUSION

The Court will re-open this case and enter the accompanying order that Defendants immediately issue a check for $15,000 be made payable to Plaintiff's grandmother in full payment of the negotiated settlement in this case.

**April 20, 2012**             **s/ Jerome B. Simandle**
Date                       JEROME B. SIMANDLE
                           Chief U.S. District Judge